IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CR-136 |
| | ) | (JORDAN/SHIRLEY) |
| JAMES DOTSON, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter comes before the Court upon the Defendant James Dotson's Motion to Suppress Evidence [Doc. 21], filed on March 29, 2005. The parties came before the Court for a suppression hearing on April 11, 2005. The government was represented by Assistant United States Attorney Tracee Plowell, and the defendant was represented by Asssistant Federal Defender Kim Tollison. Attorney Bruce Poston was present representing Codefendant Michael Crowl. Both defendants were present. At the conclusion of the hearing, the defendant asked to file a post-hearing brief. The Court granted this request and the defendant filed a supplemental brief on April 13, 2005. The government filed a supplemental response on April 19, 2005. The Court took the suppression motion and related filings under advisement on April 20, 2005.

The defendant is charged [Doc. 1] with possession of a Rossi .38 caliber revolver

1

and ammunition on April 16, 2004, while having been convicted of thirteen prior felonies; stealing a firearm that had moved in interstate commerce, namely a Rossi .38 caliber revolver, on April 15, 2004; and possession of a stolen firearm on April 16, 2004, which firearm had been shipped in interstate commerce. Codefendant Crowl is charged [Doc. 1] with possession of .38 caliber ammunition on April 16, 2004, after having been convicted of two prior felonies. Defendant Dotson challenges [Docs. 21 and 28] the April 16, 2004 search of a 1992 Saturn contending that the search violated his rights under the Fourth Amendment because (1) the searching officer did not have a search warrant and (2) no exceptions to the warrant requirement apply. The government responds [Docs. 23 and 30] that the search of the defendant's car was proper (1) as incident to the defendant's or his passenger's arrest and (2) under the automobile exception to the warrant requirement. The government argues in the alternative (3) that the evidence obtained from the defendant's car would have inevitably been discovered during a subsequent inventory search.

## I. EVIDENCE FROM THE SUPPRESSION HEARING

At the April 11, 2005 hearing, the government called Officer Ralph Richard Dyer, who had worked as a patrol officer with the Knoxville Police Department (KPD) since 2001. Officer Dyer testified that at 4:30 p.m., on April 16, 2004, he was on patrol alone in West Knoxville when he received a dispatch regarding a shoplifter and a forged check at the Target in the Turkey Creek Shopping Center. The dispatcher reported that store personnel still had the suspects in sight. Officer Dyer said he drove to Target, pulled in front of the store, and was met
2

by a Loss Prevention Associate at the front door. She handed him a telephone[1] on which he spoke with her supervisor, Mr. Gurgel. Officer Dyer said that Mr. Gurgel told him that the suspects were across the parking lot and asked the officer to follow him. Officer Dyer stated that he drove behind Mr. Gurgel, who pointed to a red Saturn. Officer Dyer pulled behind the Saturn, which appeared to match the description of the car he received over his Mobile Data Terminal. He said he blocked the Saturn, which was parked against the curb, with his police car.

Officer Dyer testified that he approached the Saturn and asked the passenger, the sole occupant whom he identified as Defendant Crowl, to step out so that he could speak with him. He said he told Crowl that he had a complaint from Target of someone passing forged checks. He frisked Crowl, who identified himself as Jason Lee. Officer Dyer said that he asked Crowl if he had anyone with him and that Crowl said, "Marlow." He said that Crowl told him that Marlow was in the shoe store and would be out in a few minutes. Officer Dyer said he seated Crowl in the back of the patrol car with the windows open, telling him that if he was not the suspect, Dyer would let him go as soon as possible.

Officer Dyer said that a person, whom he identified as Defendant Dotson, came out of the Shoe Carnival. Officer Dyer said he placed his hand on the person's arm and asked him if he was Marlow, and the defendant said, "No, Dotson." He said at this time, Mr. Gurgel who was on the other side of the patrol car, gave him a "thumbs-up," indicating that these were the suspects. He said he asked Dotson if he would answer some questions regarding a forgery

---

[1] The Court notes that this was apparently a cellular telephone because Officer Dyer testified that he met the associate outside the store.

and frisked him. He said he seated Dotson in the patrol car, advised both defendants of their Miranda rights, and asked them if they wanted to talk. He said at this point, he spoke with Mr. Gurgel, who positively identified Dotson and Crowl as the suspects. Officer Jafar Fleming, his beat partner, arrived and the two officers conferred about what was happening.

Officer Dyer testified that he tried to talk with Dotson individually, but Dotson refused to talk. Officer Dyer said he removed Dotson from his police car, handcuffed him, and arrested him for passing a stolen check. He said he searched Dotson and found the pieces of a ripped check on the account of a Mr. Marlow. Officer Dyer explained that he later learned that Marlow was an individual from Anderson County, whose home had been burglarized and whose checks had been stolen. He said he placed Dotson in a separate cruiser from Crowl. He said he asked Dotson if he could search the Saturn, but Dotson refused to consent to a search. He said that he told Dotson he would search the car anyway. He said that in the glove box he found a pistol, ammunition, and some checks. He said that neither defendant claimed the gun so he charged both with intent to go armed.

Officer Dyer testified that the dispatcher had notified him that Anderson County was looking for either this car or these two defendants but that he could not recall for what reason. Officer Dyer said that he believed that Mr. Gurgel had told him that both defendants were in the Saturn. He said that Mr. Gurgel also told him that both defendants had been in the store.

Officer Dyer testified that when he arrested an individual, he could have their car towed to the city impound lot, lock the car and leave it parked without an inventory search, or allow the person to call a licensed driver to the scene to remove the car. He said that in this case,

4

the car contained evidence from Target as well as the weapon, and he had it towed. He said it was standard KPD procedure to perform an inventory search of an impounded car.

Upon cross-examination by Defendant Dotson's attorney, Officer Dyer testified that he was not shown the forged check upon his arrival at Target but that he did examine the check at Target at some point in his investigation. He said that when he first spoke with Mr. Gurgel on the telephone, Gurgel said that he had seen both suspects in a red Saturn. He said that when he saw the Saturn in front of the Shoe Carnival, Defendant Dotson was not in it. He acknowledged that he never saw Defendant Dotson in the Saturn. He said he first saw Dotson while he was speaking with Crowl and that Dotson matched the description given by Mr. Gurgel. Officer Dyer said he told the defendant, "Come here, sir," and asked his name, to which Dotson replied, "James." He said he told Dotson that he was checking on some stolen checks and that Dotson said he did not know anything about that. Officer Dyer acknowledged that after he read Dotson his rights, the defendant did not want to talk. He said after he arrested Dotson, he put Dotson in Officer Fleming's car.

Officer Dyer testified that he checked the registration for the Saturn but did not recall who the owner was. He said he believed it was not Defendant Dotson. He agreed that the Saturn was parked in a parking spot when he drove up to it. He said the Saturn was running when he approached it and that he asked Crowl to turn it off so as not to waste gasoline. He acknowledged that he did not give the defendants the option of calling someone to move the car. He said he had the car towed because it contained evidence. He said that Crowl had told him that he bought items in Target. He said he saw cellular telephones and wrappers from Target in the front floorboard near the passenger's middle console area. He said the Saturn was a

5

hatchback and he noticed bags in the back, which suggested more merchandise had been purchased.

On cross-examination from Defendant Crowl's attorney, Officer Dyer testified that the glove box was unlocked and that it contained the pistol, boxes of checks, ammunition, and papers. He said he believed that he could see the pistol and checks upon opening the glove box. He said when he first placed Crowl in the patrol car, Crowl was not in handcuffs. He acknowledged that he did not find any checks on Defendant Crowl and that Crowl told him that he did not know anything about the gun or the checks. He said he later found a checkbook and an identification card bearing the name Marlow and Defendant Dotson's picture under the backseat of the police car.

On redirect examination, Officer Dyer testified that he believed he asked Crowl if he was the owner of the Saturn and that Crowl said, "No." He said he also asked Dotson if he owned the Saturn and that he believed Dotson said, "Yes." He said that when Dotson came out of the Shoe Carnival, he asked him if he was Marlow and that Dotson said, "No," and that he was either Dotson or James. Officer Dyer testified that Mr. Gurgel had told him that two people were involved in the forged check and gave a description of them. He also said that the dispatcher gave a description of the suspects and their car.

On recross-examination by Defendant Dotson's attorney, Officer Dyer said that he could not recall whether Defendant Dotson told him that he owned the car or that he was driving the car when he first spoke with Dotson. He said he found the identification card and checks from Union Planters Bank with "Gary D. or Toni Marlow" on them in a blue checkbook under the backseat on the driver's side of his patrol car, which is where Defendant Dotson had

6

been sitting.

On redirect examination, Officer Dyer examined his arrest report to refresh his recollection and then testified that the owner of the Saturn was James Dotson. He said that he gained this information from an NCIC records check of the Saturn's VIN and license plate numbers.

## II. FINDINGS OF FACT

The Court finds Officer Dyer's account of the events surrounding the stop of the defendants and search of the Saturn to be credible. The Court finds that at 4:30 p.m., on April 16, 2004, Officer Dyer received a dispatch regarding a forged check at the Turkey Creek Target. The dispatch described the suspects and their vehicle and stated that store personnel still had the suspects in sight. Officer Dyer also received descriptions of the suspects and their car on his Mobile Data Terminal. Upon his arrival at Target, Officer Dyer spoke by telephone with Mr. Gurgel, a Target supervisor. Mr. Gurgel reported that two persons were involved in the forged check and described them. Mr. Gurgel said that he saw the two persons get into a red Saturn, which was now across the parking lot from Target. Mr. Gurgel led Officer Dyer to the red Saturn, which was parked at the curb in front of Shoe Carnival. Officer Dyer blocked the Saturn with his police car and spoke with the passenger, Defendant Crowl. Officer Dyer had Crowl turn off the Saturn's engine and step out of the car. Defendant Crowl was frisked and identified himself as Jason Lee. Crowl told Officer Dyer that someone named Marlow was with him and that Marlow had gone into the store and would be out in a few minutes. Officer Dyer placed Crowl in his cruiser but offered to release Crowl later if he were not the person for whom Officer Dyer was looking.

7

The Court finds that Defendant Dotson came out of the shoe store and was approached by Officer Dyer, who put his hand on Dotson's arm and asked if he was Marlow. Dotson denied being Marlow and said that he was James or Dotson. Gurgel motioned to Officer Dyer identifying these two men as the suspects. Dotson denied knowing anything about stolen checks, was frisked by Dyer, and was placed in the cruiser with Crowl. At this point, Officer Dyer spoke with Mr. Gurgel who confirmed that Dotson and Crowl were the persons who had passed the forged check. Officer Dyer advised both defendants of their <u>Miranda</u> rights and attempted to talk with Defendant Dotson, who declined to speak with him. Officer Dyer removed Dotson from his police car, handcuffed him, arrested him for passing a stolen check, and searched him. Officer Dyer found pieces of a ripped check for Mr. Marlow's account on Dotson's person. Officer Dyer placed Dotson in Officer Fleming's patrol car and asked if he could search the Saturn. Dotson refused consent. Officer Dyer searched the Saturn, finding a gun, ammunition, and boxes of checks in the glove box.

An NCIC records check of the Saturn's VIN and license plate numbers revealed that Dotson owned the Saturn. Officer Dyer subsequently had the Saturn towed to the city impound lot because it contained evidence. He reported that it was standard KPD procedure for officers to perform an inventory search on an impounded car.

### III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. A warrantless search is presumed unreasonable "unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement." <u>Flippo v. West Virginia</u>,

8

Case 3:04-cr-00136-RLJ-CCS   Document 31   Filed 05/18/05   Page 8 of 19   PageID #: 11

528 U.S. 11, 13 (1999). Officer Dyer did not seek a search warrant for the Saturn so the Court turns to the question of whether any of the exceptions to the warrant requirement apply. The government argues that Defendant Dotson's car was properly searched pursuant to three exceptions: (1) search incident to the defendant's or his passenger's arrest, (2) the automobile exception, and (3) inevitable discovery of the evidence in a subsequent inventory search. The defendant disputes the application of each of these exceptions, and the Court will address them each in turn.

### A. Search Incident to Arrest

As an exception to the Fourth Amendment's requirement of a warrant, an officer may search the passenger compartment of a car incident to an occupant's custodial arrest. See New York v. Belton, 453 U.S. 454, 460 (1981). Such a search incident to an arrest must be "substantially contemporaneous with the arrest." Stoner v. California, 376 U.S. 483, 486 (1964); United States v. Barnett, 407 F.2d 1114, 1119-20 (6th Cir. 1969). The fact that the arrestee is no longer in a position to reach into the car at the time of the search does not affect the propriety of the search. See United States v. White, 871 F.2d 41, 44 (6th Cir. 1989) (analyzing situation in which defendant handcuffed and detained in patrol car at time officer searched his car incident to his arrest). In fact, the Supreme Court has recently held that an officer may search the passenger compartment of a car incident to the defendant's arrest even when the officer did not stop the defendant until he had already left his vehicle. Thornton v. United States, 541 U.S. 615, 124 S. Ct. 2127, 2132 (2004). In Thornton, the Court reasoned that the defendant was a "recent occupant" and that "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." Id., 124 S. Ct.

9

at 2131. Thus, the Supreme Court confirmed the bright-line rule established in Belton that once an officer has probable cause to arrest a suspect who is a recent occupant of a vehicle, the officer may search the passenger compartment to ensure officer safety and preserve evidence. Thornton, 124 S. Ct. at 2132. In the present case, the Court finds that Officer Dyer stopped Defendant Dotson as he exited the Shoe Carnival and walked toward the parking lot. Officer Dyer admitted that he never saw Dotson in the Saturn but testified that Mr. Gurgel told him that both defendants had been in the car. There is no evidence in the record regarding how long Dotson had been in the Shoe Carnival, although the testimony regarding Mr. Gurgel's observation of the suspects getting into and driving the red Saturn to another store coupled with the fact that Crowl remained in the Saturn with the engine idling suggests that it had not been a long time. Moreover, the record is not clear on how close Dotson was to the Saturn when he was stopped by Officer Dyer. The officer did testify that the Saturn was parked by the curb in front of the store, which suggests that Dotson was relatively close to the Saturn when stopped.

The defendant argues that Officer Dyer could not properly search the car incident to his arrest because there is no proof in the record of when he may have last been in the car. He argues that this case is distinguishable from Thorton because Officer Dyer never saw him in the car and he was not apprehended immediately upon exiting the car. Thus, he was not a "recent occupant," nor did he present any danger either to the officer or to any potential evidence in the Saturn, as he was secured in the police car at the time of the search. The government responds that the defendant cites no authority for his contention that the officer must have seen the defendant inside the car for him to be a recent occupant within the meaning of Thornton.

In Thornton, the officer followed the defendant as he drove and stopped him after he

10

parked and exited his car. Id., 124 S. Ct. at 2129. The Court held that "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." Id., 124 S. Ct. at 2132. Although declining to set a standard with regard to distance or time, the Thornton Court observed that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search." Id., 124 S. Ct. at 2131. In the present case, the Court believes there is insufficient evidence to determine whether Defendant Dotson was a recent occupant of the car as the record does not show how close Dotson was to the Saturn or how much time had elapsed since he left it. Although Officer Dyer's testimony that Mr. Gurgel told him he saw the suspects drive away in the Saturn and park by another store suggests a short period of time, there is nothing in the record linking when this occurred with the dispatch that Officer Dyer received at 4:30 p.m.

In any event, the Court does not have to resolve the issue of how much time can elapse or distance separate before a defendant who exits his car is no longer a "recent occupant" because Officer Dyer could properly search the car incident to Defendant Crowl's arrest. See United States v. Myers, 102 F.3d 227, 232 (6th Cir. 1996) (affirming the search of the defendant's car incident to the arrest of a passenger). Defendant Crowl was in the car when Officer Dyer approached him and was detained and then arrested shortly after he was removed from the Saturn. The Court finds that the search of the Saturn was permissible pursuant to this exception to the warrant requirement, not withstanding the fact that Crowl remained in Officer Dyer's police car where he could not access any weapons or evidence from the car. See White, 871 F.2d at 44.

**B. Automobile Exception**

11

The government also argues that Officer Dyer could properly search the Saturn pursuant to the automobile exception because he had probable cause to believe that contraband in the form of merchandise purchased from Target with the forged check would be in the car. When "police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any contents located within it." United States v. Mans, 999 F.2d 966, 969 (6th Cir.), cert. denied, 510 U.S. 999 (1993); see also California v. Acevedo, 500 U.S. 585, 580 (1991); United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998). The mobility of an automobile as well as the reduced expectation of privacy stemming from the fact that automobiles are highly regulated gives rise to this automobile exception to the warrant requirement. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). As long as the automobile is mobile and police have probable cause to believe that the automobile contains evidence of the crime, no exigent circumstances need be present. Id.; see also Maryland v. Dyson, 527 U.S. 465, 466-67 (1999); United States v. Cope, 312 F.3d 757, 775 (6th Cir. 2002). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).

In the present case, Officer Dyer was dispatched to Target on a report of shoplifting and a forged check. He was given a description of the suspects and their vehicle. Once at Target, he learned from Mr. Gurgel, a Target supervisor, that two people were involved in the forged check and that they had left Target in a red Saturn and were now parked across the parking lot. He followed Mr. Gurgel to the car in question and also noted that it matched the description from the dispatcher. Upon questioning, Crowl acknowledged that he had purchased items from Target.

12

Case 3:04-cr-00136-RLJ-CCS   Document 31   Filed 05/18/05   Page 12 of 19   PageID #: 15

Officer Dyer said packages were visible[2] through the hatchback of the Saturn. Mr. Gurgel confirmed that Dotson and Crowl were the suspects. Officer Dyer also learned from Mr. Gurgel that both defendants had been inside Target, where the stolen check was passed. The Court finds that at this point, Officer Dyer had probable cause to believe that the Saturn contained the Target merchandise that had been purchased with a stolen check.

The defendant argues that the automobile exception does not apply because he was handcuffed and locked in a police car at the time of the search. Thus, he contends that he could not have moved the car from the scene, which is the very danger contemplated by the automobile exception. He argues that the automobile exception does not apply because the Saturn was not readily mobile as both defendants had been arrested prior to the search of the car.

In United States v. Markham, the Sixth Circuit examined the meaning of the automobile exception's mobility requirement:

> The Supreme Court [has] held that the automobile exception is based on two primary considerations--the ready mobility of motor vehicles and the reduced expectations of privacy in motor vehicles--which justify searches without prior recourse to the authority of a Magistrate as long as the overriding standard of probable cause is met. . . . The Carney case, however, makes it clear that the automobile exception is not based solely on the immediate mobility of a vehicle. As stated by the Supreme Court:
>> [A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. [South Dakota v. Opperman ], 428 U.S. [364], at 367 [ . . .

---

[2] Officer Dyer also testified that he saw cellular telephones and Target packaging in the front floorboard of the Saturn, but it is not clear from his testimony if he saw this while questioning Crowl before he searched the car or during the search. Accordingly, the Court does not rely on this evidence as support for its probable cause finding.

13

> (1976)]. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Ibid.
>
> California v. Carney, 471 U.S. at 391 . . . .
>
> In fact, the Supreme Court noted that even in cases where an automobile is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle has justified the application of the exception. Id. The Supreme Court concluded that:
>
>> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes–temporary or otherwise–the two justifications for the vehicle exception come into play.
>
> Id. at 392-93 . . . .

844 F.2d 366, 367 (6th Cir.), cert. denied, 488 U.S. 843 (1988). Thus, ready mobility does not equate with immediate mobility. Id. Although the court observed that the officers could have placed the vehicle under surveillance while the defendant was gone and obtained a warrant, it held that they were not required to do so: "[W]henever a vehicle is readily capable of use on public roads, the automobile exception is applicable." Id. at 369. Indeed, the Sixth Circuit has held that the fact that the officer had time to secure a warrant is not a factor in the application of the automobile exception. United States v. Hoffstatter, 8 F.3d 316, 322 (6th Cir. 1993) (holding that "[a]lthough the government might have had time to secure a warrant to search the automobile, there was no requirement that it do so").

In determining whether the defendants' arrest in the present case affected the ready mobility of the Saturn or only its immediate mobility, the Court compares the facts of this case with those in United States v. Cope, 312 F.3d 757 (6th Cir. 2002). In Cope, the defendant was arrested while talking with an undercover agent about arranging a contract killing. Id. at 766-67. After his

14

arrest, the defendant acquiesced in the search of his truck, which contained money and incriminating letters. Id. Although the court questioned the voluntariness of the defendant's consent, it upheld the search under the automobile exception. Id. at 774-75. The court held that the "automobile exception is applicable even in nonexigent circumstances, so long as the vehicle is mobile and law enforcement officers have probable cause to believe that it contains incriminating evidence." Id. at 775. In Cope, as in the present case, the defendant had already been arrested at the time of the search. See id.; see also United States v. McDonald, Nos. 97-5339, 97-5556, 97-5338, 97-5187, 97-5196173, 1999 WL 149658, *12 (6th Cir. Mar. 1, 1999) (upholding search of defendant's car pursuant to the automobile exception after the defendant had been arrested). But cf., United States v. Swanson, 341 F.3d 534, 532-33 (6th Cir. 2003) (relying upon the fact that the defendant had not been arrested at the time the police searched the car to apply the automobile exception). Under the application of this case law, the Court finds that the Saturn in the present case was readily mobile or capable of use on the public roads even though it may not have been immediately mobile because the defendants were both arrested and detained in police cars. Accordingly, the Court finds that the officer could also properly search the Saturn pursuant to the automobile exception.

**C. Inevitable Discovery**

Finally, the government argues that even if the search of the car was not proper as incident to arrest or pursuant to the automobile exception, the evidence from the car should not be suppressed because the police would have inevitably discovered it in a subsequent inventory search. The defendant challenges this justification for the search on two grounds: (1) he argues that the officers had no reason to impound the Saturn and (2) he contends that there is no evidence that the

15

Saturn was inventoried pursuant to standard police procedures.

The doctrine of inevitable discovery provides that improperly seized evidence is admissible if it would have been inevitably discovered by valid means. Nix v. Williams, 467 U.S. 431, 443-44 (1984); United States v. Kennedy, 61 F.3d 494, 497-98 (6th Cir. 1995). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." Williams, 467 U.S. at 444. "For the inevitable discovery exception to apply, it must be demonstrated that the evidence inevitably would have been acquired through lawful means had the government misconduct not occurred." Kennedy, 61 F.3d at 497.

In the present case, the government argues that the evidence would have been inevitably discovered through an inventory search of the Saturn. "After lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search. Such inventory searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" Lumpkin, 159 F.3d at 987 (quoting Colorado v. Bertine, 479 U.S. 367, 372 (1987)). An inventory search must be carried out according to standard police procedures. Id. In general, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." Bertine, 479 U.S. at 374; Lumpkin, 159 F.3d at 987 (holding that although the inventory policy was not a part of the record, the officer's undisputed testimony was sufficient to show that the vehicle was searched in good faith pursuant to the standard procedures). Although an inventory search cannot be conducted for the purpose of investigation, an officer's subjective suspicion that the vehicle contains

16

contraband does not invalidate an inventory search that is otherwise proper. Id.

First, the defendant questions Officer Dyer's decision to impound the Saturn, contending that the car was properly parked in the shopping center, the owner of the shopping center was not asking that it be moved, and the car itself was not related to the charge of passing a forged check. The government responds that under KPD procedure, Officer Dyer was permitted to impound the Saturn upon arrest of its owner. At the suppression hearing, Officer Dyer testified that when he arrested an individual, he had three options with regard to the person's vehicle: (1) he could have it towed to the city impound lot, (2) he could lock it and leave it parked without an inventory search, or (3) he could permit the arrestee to call a licensed driver to the scene to remove it. He testified that in this case, he had the car towed to the impound lot because it contained evidence from Target as well as the weapon.

Part of the reasoning behind permitting evidence discovered in an inventory search is that such searches are part of routine police procedures and, thus, not arbitrarily used as an investigative tool. See Bertine, 479 U.S. at 372-73. The Supreme Court has held that an officer may properly exercise discretion on whether to impound a car "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. at 375; United States v. Kimes, 246 F.3d 800, 804 (6th Cir. 2001), cert. denied, 534 U.S. 1085 (2002). For example, in Bertine, the Court found the officer's discretion "was exercised in light of standard criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." Bertine, 479 U.S. at 375-76. In Kimes, the court noted that the officers would permit the driver's relatives or friends to take the car if they were present or could arrive promptly. Kimes, 246 F.3d at 804 (holding that the officers' discretion in

17

conducting the inventory search did not defeat the inevitable discovery doctrine). In the present case, there is no evidence in the record of any KPD criteria relating to which of the three options an officer should choose.

Additionally, the defendant contends that the record is devoid of evidence that the inventory search was conducted pursuant to standard police procedures. Although Officer Dyer testified that it was standard KPD procedure to perform an inventory search of an impounded car, he did not state whether there were KPD procedures for performing inventory searches or whether the inventory search of the Saturn[3] conformed to those procedures, if they exist. An inventory search must proceed pursuant to "standardized criteria" or "established routine" in order to protect against the use of inventory searches as "a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990). In the present case, the government has failed to show that the inventory search of the Saturn was conducted pursuant to the KPD's standardized criteria. Accordingly, the Court finds that although an inventory search could have potentially provided a valid basis for the inevitable discovery of the evidence in the Saturn, such was not proven in this case. Nevertheless, as discussed above, the Court finds that the search of the car was proper incident to the passenger's arrest.

---

[3]The Court notes that Officer Dyer did not expressly state that an inventory search was performed on the Saturn but only related that it was standard procedure to conduct one on impounded vehicles.

## IV. CONCLUSION

Based upon the reasons discussed herein, the Court respectfully recommends that the defendant's Motion to Suppress Evidence [**Doc. 21**] be **DENIED**.[4]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).