IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | No. 3:04-CR-136 |
| | ) | |
| JAMES DOTSON | ) | |

## MEMORANDUM AND ORDER

This criminal case is before the court on the objections filed by defendant James Dotson to the report and recommendation [docs. 36 and 40]. The government has not filed a response. A transcript of the suppression hearing has been prepared and filed [doc. 39]. For the reasons discussed below, the defendant's objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

**Factual Background**

The magistrate judge recommended that the defendant's motion to suppress the firearm and ammunition found in the glove box of the defendant's car be denied. Briefly, the facts are that on April 16, 2004, at about 4:30 p.m., a Knoxville Police Department officer, Richard Dyer,[1] received a dispatch concerning two men passing a forged check in the Target store in West Knoxville. Officer Dyer was given a description of the men. Officer Dyer responded to the call, and upon arriving at the Target, he was met by a loss prevention associate who told him that her supervisor, Mr. Gurgel, was on the phone. Mr. Gurgel told Officer Dyer that he was in his own vehicle watching the suspects, and the car, a red Saturn, was at the other side of the shopping center. Mr. Gurgel signaled to Officer Dyer, and they drove over to the red Saturn parked in front of the Shoe Carnival. Officer Dyer used his patrol car to block the Saturn so it could not be driven away. There was no driver in the car, only a passenger, Michael Crowl, a co-defendant in this case.

Officer Dyer asked Crowl to get out of the car so he could talk to him about the forged check report from Target. He told Crowl, who initially gave his name as Jason Lee, that if he was not involved, he would "cut him loose just as quickly as possible." The Saturn's engine was running, and Officer Dyer turned off the car and left the keys inside or placed them on the roof.

---

[1] Spelled "Dior" in the transcript.

Officer Dyer asked Crowl if anyone was with him. Crowl said that "Marlow" was with him and he was in the shoe store. Marlow is name on the forged check. Crowl admitted that they had purchased some items in the Target store. After patting him down for weapons, Officer Dyer put Crowl in the back seat of his police car and rolled down the windows so he could see and hear what Officer Dyer was doing. At that point, a man fitting the description of the second man came out of the shoe store, and Officer Dyer asked him if he was "Marlow." He said that he was "James Dotson."[2] In the meantime, Mr. Gurgel indicated that Dotson was the suspect from the Target store.

Dotson initially agreed to talk with Officer Dyer and admitted that the red Saturn was his. Officer Dyer then patted him down and put him the police car, also. Officer Dyer read the two men their *Miranda* rights and asked them if they wanted to answer some questions, but Dotson said no. Then, Officer Dyer confirmed with Mr. Gurgel that the two men in the police car were the two men who had passed the forged check in the Target store. The two men were separated – Dotson in Officer Dyer's police car[3] and Crowl in another officer's police car.

---

[2] Spelled "Dodson" in the transcript.

[3] After Dotson was removed from his police car, Officer Dyer searched the back seat and found a checkbook and an ID. The ID had Dotson's picture, but was in the name of "Marlow," and the checks in the checkbook were imprinted with the names "Gary D. or Tony Marlow."

3

Officer Dyer asked Dotson if he could search the car, and Dotson said no. Officer Dyer decided to search the car anyway. He placed Dotson under arrest and handcuffed him. Officer Dyer did another pat-down search of Dotson and found a torn-up check with the name "Marlow" on it. The court will assume for purposes of this opinion that Crowl was not arrested until after the search of the car.[4] In the glove box, Officer Dyer found a loaded pistol, ammunition and a box of checks. Some items purportedly purchased at the Target store were also found in the vehicle. The vehicle was towed to the City impound lot. Officer Dyer testified that it was standard Knoxville Police Department procedure to do an inventory of the contents of impounded vehicles.

**Legal Discussion**

The government contended that the search of the red Saturn and seizure of the firearm and ammunition was proper under three "exceptions" to the Fourth Amendment's warrant requirement. The government argued that (1) the search was incident to Dotson's arrest; (2) the search was proper under the automobile exception; and (3) the theory of inevitable discovery applied. The magistrate judge found that the search was proper incident to *Crowl*'s arrest and pursuant to the automobile exception. The magistrate judge found, however, that

---

[4] In his report and recommendation, the magistrate judge found that Crowl was arrested before the search. This finding is not necessarily refuted by the transcript. But, Dotson has filed a motion asking to supplement the record with the video from Officer Dyer's police car, which he claims will show that Crowl was not arrested until after the search. The import of this difference will be discussed below.

the evidence was not sufficient to apply the inevitable discovery theory to this search.

### 1. Incident to Arrest

The magistrate judge correctly found that a search of the red Saturn incident to the passenger's arrest was proper. Dotson, however, suggests that the passenger, Crowl, was not arrested until *after* the search of the vehicle. Assuming this fact to be correct, the search of the Saturn would be proper only incident to Dotson's arrest.

In *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), the Supreme Court stated the following rule: "when a policeman has made a lawful custodial arrest of the occupant of the automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 2130 (quoting *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981)). "This rule was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence." *Id.* The Court recognized that whether the arrestee was a recent occupant may turn on his "temporal or spatial relationship" to the automobile. *Id.* at 2131-32.

The magistrate judge recognized that this is the problem with the government's "incident-to-arrest" argument. The evidence does not conclusively

5

establish that Dotson was a recent occupant of the Saturn. While Mr. Gurgel may have seen Dotson driving the vehicle some time before Officer Dyer arrived, Officer Dyer never saw him in the Saturn, nor is there any evidence about how long Dotson was in the Shoe Carnival. Although the car was still running when Officer Dyer arrived and Crowl said that Dotson had been driving, the court finds that this evidence was insufficient to justify the search of the Saturn incident to Dotson's arrest. Dotson was temporally and spatially removed from the Saturn such that there was no real threat that he would attempt to retrieve a weapon from the car. The court finds that the search of the Saturn cannot be justified as incident to Dotson's arrest.

### 2. Automobile Exception

Dotson also objects to the magistrate judge's finding that the search is justified by the automobile exception to the Fourth Amendment's warrant requirement. First, he claims that his vehicle was not readily movable and second, that Officer Dyer did not have sufficient probable cause to search his vehicle.

Under the theory that an automobile may be an instrumentality of a crime, the Supreme Court allows searches of automobiles. If a "car is readily mobile and probable cause exists to believe it contains contraband," the police may search the vehicle without a warrant. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (citing *Pennsylvania v. Labron*,

518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996)). The Supreme Court, however, has declined to limit the automobile exception to vehicles that can be immediately moved. Even in cases where the automobile was not immediately mobile, the Supreme Court has applied the automobile exception due to a reduced expectation of privacy in one's automobile. *See California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985); *see also United States v. Markham*, 844 F.2d 366, 368-69 (6th Cir. 1988). As long as the vehicle is capable of being used on the highways or is readily capable of such use (*i.e.*, by turning the ignition key), then the automobile exception applies if there is sufficient probable cause to search the vehicle. *Carney*, at 392-93, 105 S.Ct. at 2070.

In this case, Dotson argues that because his vehicle was blocked by Officer Dyer's police car it was not readily mobile. The court finds, as did the magistrate judge, that the red Saturn was readily "capable" of use on the public roads and was, thus, subject to search. The fact that the Saturn could not be backed out of the parking space at that instant does not prevent the search under this exception.

Dotson also claims that Officer Dyer did not have sufficient probable cause to search the Saturn. A search of an automobile will not be unreasonable if it is based on facts which would support the issuance of a warrant even though no warrant was obtained. *Dyson*, 527 U.S. at 466-67, 119 S.Ct. at 2014. In other

7

words, the officer must have sufficient probable cause to believe that the automobile contained evidence of a crime at the time he searched. "The test for 'probable cause' is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002), *cert. denied*, 540 U.S. 871 (2003) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)).

In this case, Officer Dyer had the positive identification of the defendants and their vehicle from Mr. Gurgel, the Target store loss prevention supervisor. Second, Crowl admitted that they had been in the Target store and had purchased items and that the driver of the Saturn was someone named "Marlow," the name used on the forged check in the Target store. Third, there was a discrepancy in the driver's name; that is, the person whom Crowl identified as "Marlow" gave his name as "James Dotson." Fourth, Officer Dyer saw shopping bags in the back of the Saturn. And finally, Officer Dyer found a torn-up check with the name "Marlow" on it in Dotson's pants pocket. The court finds that there was more than a fair probability that evidence of the crime he was investigating would be found in the Saturn.

The defendant's objections on this issue will be overruled.

### 3. Inevitable Discovery

The magistrate judge found that the search of Dotson's vehicle could not be justified on the theory of inevitable discovery. In order to determine

8

whether the inevitable discovery rule applies, the court assumes that the search was unlawful, and then looks at what would have happened had the unlawful search not occurred. See *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001). That is, would the evidence have been acquired through lawful means. *Id.*

This court finds that this is a close question in this case. The testimony at the suppression hearing was that Officer Dyer, per Knoxville Police Department procedure, had the Saturn towed to the impound lot subsequent to the arrest of the defendants. And, Officer Dyer testified that it was standard procedure to do an inventory of the contents of impounded vehicles. The fact that the government did not introduce the procedures themselves into evidence is what makes this a close issue. However, proof that evidence "would have been detected in 'an inventory search that would inevitably follow seizure of a car is sufficient to invoke the inevitable discovery exception to the exclusionary rule.'" *Id.* (quoting *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)).

Although the court has found that the search was proper under the automobile exception to the warrant requirement, this court finds that the inevitable discovery exception to the exclusionary rule also applies to the search in this case.

## Conclusion

For these reasons, the court **ADOPTS** the magistrate judge's report and recommendation as to application of the automobile exception to the search of the defendant's vehicle and also finds that, in any event, the evidence would have been inevitably discovered. It is hereby **ORDERED** that defendant Dotson's objections to the report and recommendation are **GRANTED** as to his "incident-to-arrest" argument, but **OVERRULED** as to his "automobile exception" argument, and the motion to suppress [doc. 21] is **DENIED**. It is further **ORDERED** that defendant Dotson's motion to introduce additional proof [doc. 41] is **DENIED AS MOOT**.

ENTER:

      *s/ Leon Jordan*
United States District Judge